Your Honor, good morning. Gary Burcham on behalf of the appellant, Mr. Sanchez. The first issue before the court in this case concerns what information a district court may consider following an amyline-limited remand back to the district court. What happened in this case was fairly unusual, at least in my experience in the arena of amyline remands. Following this court affirming the convictions but sending the case back to the district court for the amyline determination, the district judge did not simply solicit the views of counsel and then make a determination as to the first prong of amyline, whether the sentence imposed would have been materially different had the district court known the guidelines were advisory. The district court in this case essentially conducted the equivalent of a full re-sentence. It brought Mr. Sanchez back to the district court and it had a lengthy evidentiary hearing where Mr. Sanchez testified under oath, answered questions from the prosecutor, answered questions from the district court, and gave a lengthy statement to the district court about some of the things that had been happening in his life following the original sentencing. And this was a significant amount of time. This was a four-year difference from the time of the original sentencing hearing up until the time of the amyline remand. After the district court solicited all of this information from Mr. Sanchez, it ultimately decided that it had to disregard that information and make the amyline determination simply based on the state of the record at the time of the original sentencing, which was four years later. Excuse me. From a legal standpoint, Judge Carter was correct, which I think we obviously need to decide. The fact that he held that hearing and did what he did wouldn't confer jurisdiction on him that he didn't already have, would it? In terms of? Well, in other words, if the law is, as the government suggests that, as Judge Carter concluded, that he didn't have jurisdiction to consider new facts, the fact that he held a hearing that went into a lot of new facts is kind of beside the point, isn't it? I mean, it comes down to the legal question of whether he was permitted to conduct a full sentencing hearing in the first place. Right. Well, that sort of segues into my second argument, which is even if this Court determines that in general courts should not determine post-sentencing or use post-sentencing information to make the amyline first-stage determination, in this case the extent of the information solicited by the district court really changed the playing field with regard to, you know, can a district court, can a district judge, taking all this information, I think giving some real sincere and heartfelt statements to the court, can a judge set all that aside and then make that determination based on a record that was from four years earlier? And so our alternative position, as opposed to simply saying that a judge can consider this, would be that in this particular case, given the nature of the proceedings on remand, that the district judge really should have considered these because it's virtually impossible to put those. What jurisdiction, and I'm wearing two hats here because I'm a district judge most of the time, what is the jurisdictional basis for a district court essentially to conduct a resentencing based on newly discovered information or newly acquired information when the only scope of the mandate from the court of appeals is an amyline remand? I mean, what is the jurisdictional foundation for the court to do that? That's what I'm struggling with. Okay. Not, I mean, what happened is what happened, but we're not really talking about fairness. We're talking about jurisdiction. So what is the court's jurisdiction if the only remand from the court of appeals is amyline? What is the district court's jurisdiction to conduct a resentencing? I think the jurisdiction comes from 3553A, which, of course, now governs federal sentencing and which requires district courts to impose a sentence that, as much as possible, comports with the goals of 3553A. And upon remand, if a district court is simply going to ignore all of the facts and all of the information up to the present in sentencing a defendant, I think that in some cases it might not make a difference, but in many cases the district court might be compelled to affirm a sentence that it knows is not appropriate. Well, that may be right, but isn't that a legislative problem rather than a problem for the district court? As I understand the scope of an amyline remand, as I've always understood it, it is a looking back. What would you have done had you known that the guidelines weren't mandatory? That's the only question you're being asked. Well, amyline doesn't specifically give us timelines with regard to that. I agree with Your Honor that in general that's what the case says, but there's nothing in amyline that says you have to go to that point and not consider anything after that point. And so I think it's an open question in this Court. Other circuits have come out differently on this. Three circuits have said you can't consider it. Two circuits in different situations have said you can. But it's really an open question in this Court. And, again, I direct the Court back to 3553A, which is the very basis for federal sentencing. We need to get these sentences right and comport as much as we can with the goals and factors of 3553A. In my mind, anyway, we have a big problem here. See, I was a district judge for 12 years, and I was incursed with the sentencing guidelines. And I sentenced under a different regimen, where as a district judge you had to look someone straight away, and you had to decide what the sentence ought to be. Now the range of a district judge, or it was under the guidelines, is very narrow. And what the sentence ought to be imposed is now determined basically by the young prosecutors who now, or had before Booker came out, the power over sentencing based on how a matter was charged or based on whatever appeal he made. And in the old days, to me, it was unthinkable that you'd make someone waive their right to an appeal as part of a plea bargain. Or you would more severely punish someone who exercised their constitutional right to have a jury trial. Oh, you had a jury trial, so you cost the government more money. You're wasting our time. So you get more severe punishment out of it, which discourages the jury trials. And it isn't enough that in the old days, the conviction rate in federal court in Los Angeles was about 99%, you see. So the guidelines have been declared unconstitutional, but yet we have a system where a lot of probation officers, instead of trying to rehabilitate people, spend their time trying to figure out what the guidelines call for. And it seems to me only a matter of fairness that if there's a legitimate circumstance that ought to be considered in imposing a sentence at the time of an Ameline remand, that the district judge ought to look at it. Because when you say to a district judge who has never had to live under the old system that we've discarded, yeah, we want you to tell us that we're going to go through the guidelines and, you know, you have to figure that out. And then we want you to tell us whether you would impose the same sentence on remand, knowing that the guidelines were unconstitutional, that you would have imposed had you known that you had discretion under Ameline. So, you know, that could be a cop-out, particularly if you never really experienced the work of a district judge when you didn't have all this. So I never could, I don't know what harm it is, and I don't know that even my thinking would help you in this case. But I don't see what the harm is to let that new information come in and the district judge could just decide, well, okay, fine, I've heard it, and I'm not going to have it influence my thinking because of other matters that are on the record. Your Honor, I agree with everything you just said. Well, I knew you would. You said it much better than I could have. You have such a nice smile on your face. I appreciated that. It just comes down to getting the sentence right, and that's what it's all about, giving an appropriate, just sentence to a defendant that takes into account his history and characteristics, gives that person the treatment or rehabilitation they need, and there's just no reason not to consider information following the original sentencing hearing just so we can get the sentence right and make sure that the punishment is just. If the Court has... You've got a minute and 25 seconds over. May I reserve a couple of minutes for rebuttal? All right. You've got a deficit, see. I give a couple back. We've got to learn to live with that deficit. We do. We certainly do. Thank you. May it please the Court, my name is Ellen Lindsey. I'm an assistant United States attorney in Los Angeles. I love being referred to as a young prosecutor. What did you say? I love being referred to as a young prosecutor. Did you say as a gun prosecutor? Young. Young, youthful. Young. Young prosecutor. Well, I'm 85, so you look like a kid to me. Relatively speaking, you're a head. You're a head, yes. Okay. I like that. Yes. Well, obviously, I would agree with Judge Fogel that the sole question on the Ammaline remand is would the judge have ruled differently had he known at the time that the guidelines were advisory and not mandatory. And really, the Ammaline question is simply... In addition to that, he's got to go through this process under 3553 if he wants to, you Or above. Or above, yes. So it's still got to toe the line. Well, actually, I was a prosecutor before the guidelines and through the mandatory guidelines and after, and I do think district judges are taking their discretion very seriously. To me, it's beginning to resemble what it was like when there were no guidelines. But in this matter, the Ammaline remand is really kind of conferring on the district court or referring back to the district court to complete the plain error analysis by asking the district judge the question of whether he would have ruled differently, whether the error was, in fact, plain. And the government's position is that this is a question, since it's basically the plain error review with one question conferred to the district judge that is based on the record as it was at the time that the decision was made. And the Combs case, which stated that it's inappropriate on Ammaline remand to raise new issues, basically decided, I think, the matter that we're discussing today. And I understand Judge Pragerson's concern with the fairness to the defendant, but I have two things to say about that. Well, you know, Earl Warren, you remember who he was? I don't know personally. I did. He was a wonderful man, and he was guided by one rule. You know what that was? Yeah. Is it fair? Well, it is the government's position, and I think it is supported in the policy statements of the guidelines, which, although are not mandatory, are to be considered under 3553A5. The policy considerations are that post-sentencing rehabilitative conduct should not be considered because it's not fair to the great majority of defendants who don't get their cases remanded by whatever stroke of luck. Counsel, that's kind of the question I was trying to address with your colleague, and perhaps you can help me with this. Is there any procedure under Federal law for a person who does not get an Ammaline remand, somebody who was sentenced, say post-Booker, and has post-sentencing rehabilitation like Mr. Sanchez did here, to get back before the district court? Is there a procedure for that to occur? Is there any way that jurisdiction could be conferred on the district court to conduct such a hearing? I just, first of all, have to say that I, as somebody who lived with this case for many, many years, I don't believe that Mr. Sanchez showed genuine remorse. Okay. No, let's just speak hypothetically. Okay. Speaking hypothetically, this is what Guideline 5K2.19 states, is that those other defendants do not have the ability to come back to the district court, but all of these defendants. If your conduct in prison is good conduct, you are rewarded for that with your good time credits. And in the case of Mr. Sanchez, they transferred him, I think, from the minimum security to the camp. Well, that's – but the answer to my question is no, correct? In other words, if someone is sentenced after Booker, and the district court has discretion and imposes a guideline sentence having exercised its discretion, and then that defendant post-sentencing engages in some type of extraordinary post-defense rehabilitation, that person has no way to get back to the district court, correct? That's correct. And so the situation we have here is because of Ameline, people in Mr. Sanchez's position have a way to get back to the district court for the purpose of complying with Ameline. Correct, Your Honor. But the government's position, as I understand it, is that that does not open up an avenue of post-sentence or post-conviction sentence review that other defendants don't have. That's the government's response to Judge Pragerson's fairness argument. Well, I think it's basically, but I think my answer is that legally there is no right, because Ameline asks that one question, which is really, as I said, a plain error review question, and Combs supports the idea that legally you don't bring up new information. But on a fairness, on the question of what's fair, it's not fair in the scheme of things to allow this defendant, just by the luck of the circumstance that his sentence was imposed when the guidelines were thought to be mandatory, it's not fair to all those other defendants who have exemplary behavior in custody, whereas Mr. Sanchez did not. It's to be remembered that he had a disciplinary violation. And so it's not fair to the great majority of defendants, and 5K2.19 recognizes that. You know, under the old system, a defendant had 120 days within which to file and ask for a modification of the sentence. You know, do you remember that? Now they've got 10 days, I think. Very small window of time. To file the notice of appeal. And within that 120 days, Mr. Sanchez had not exhibited the type of behavior that he wanted the district court to consider as his rehabilitation. He actually had, first, a disciplinary action. But see, the district judge had power then. You know, I remember I sentenced a couple of guys who were draft resistors. And I always was under the impression that they would be sent to Arizona, and they'd spend their time there milking cows and planting vegetable gardens. It wasn't a bad thought. And then I went up to Lompoc, and I asked the warden, I said, have I got any people here? He said, yeah, who are they? He told me their names. And I said, well, I'd like to talk to them. So he brought one guy out who had a long beard, long hair. And I said, well, where are they keeping you? He says, oh, I've been in solitary confinement. I said, well, how is solitary confinement? He says, it's not too bad. He said, they give you a lot to read, but we're next to Vandenberg Air Force Base, and we get all the books that they're giving away. And he said, they're all war stories. And can't you get us some variety? And I listened to him, and I had the other fellow come out. And the reason he was in solitary confinement is he didn't want to cut his hair. And so I thought about it. And none of these guys you'd want to have in the foxhole next to you, as far as I'm concerned. Being in the military was an honor and a privilege and a duty. And so on my way back to my chambers, I thought, you know, I'm just going to modify this sentence, which I did. I just modified it to time served. They both were released the next day. But I had the power to do that, to do what I thought was just. You don't have that anymore. Well, Your Honor, I think under the advisory guidelines, the judges are very, very, very careful to do what's just and to examine all the 3553A factors. Yeah, but their power is very restricted. You see, you know, they want a sentence. They can sentence within that narrow guideline range. If they want to move out of it, they've got to go through a whole rigmarole, a whole process, make findings and do all those other things. Well, in essence, Your Honor, in this case, at the original sentencing, the guidelines were very, very far above the 180-month sentence that the district court. I'm not talking about this case. What I'm talking about is what's the big problem when you have an amylene remand and there's some additional information that was not available at the time and what's the problem with the judge considering that? Well, it takes a couple of minutes. And here you have a system where we're still employing an unconstitutional regimen. The Supreme Court said in Booker that the guidelines were unconstitutional, right? Yes. So we're still using them to sentence people. It seems kind of odd to me. I'm just talking to you because I've got a good audience. Don't worry about it. I'm not going to change the world. Well, I think Judge Fogel being a district court would agree. Yeah, he's a wonderful guy. He's a wonderful fellow. But he hasn't lived through the things I have. So stipulate. My father was a soldier of the First World War, and his grandfather was a sailor. And they were buddies, you know, and I think both of them would agree with me. I'll have to ask my grandfather somehow what he would do. Your Honor, I guess I understand what you're saying, and I think it comes back to the two things. First, that allowing defendants who just by happenstance end up in the position of this defendant, it creates an unfair system, not maybe for this defendant, but for the whole body of defendants who don't have this opportunity. It creates a sentencing disparity. Well, if they were sentenced under an unconstitutional system, we ought to bring them all back and do it right. Well, I believe that that's what the underlying... But it's too much trouble, you see. It's better that they stay in prison maybe longer or whatever than bring them back and say, well, you're sentenced under unconstitutional regimen, and so we're going to do it right this time. I think that's... The district court is allowed... No, we don't worry about those things. We'd rather keep them in prison and spend $40,000 a year on them. I think that this defendant received what he should have received for his... Any good conduct that he... I'm not here defending his client. I'm just talking... It is the government's position, my position in this case, Your Honor, that it would be unfair, as I said, to allow this defendant the benefit that other defendants are not receiving. And I do believe that Judge Carter, who was a state court judge for many, many years... Carter's my buddy. He's as gladly wounded Marine First Lieutenant as I am. And he drives his courtroom like a Marine commander. I know. He's a little obsessed with that. He's great. But he... I love him. I love him. He wanted us to... He's another big Judge Pregerson that I agree about. He wanted us to wake up at 5 in the morning and run the stairs before court. Oh, I know, I know, I know. You know, Ms. Lindsey, you make a wonderful argument, but no one has ever won an argument with Harry Pregerson. I'm happy to convince the other, the two of you, and then I just... That's about it. That's about it. Yeah, we got it. We got it. Well, thank you very much, and I submit. That was a good argument. I'm glad that I had a chance to meet you after these years have gone by. I just have a couple quick points for the Court. Combs did not address this issue. Combs dealt with whether a defendant could raise new legal objections following an ameliorated remand. So this issue really is undecided in this circuit. With respect to the fairness issue, the fact that some defendants don't enjoy the right to an ameliorated remand doesn't make it right to limit the scope of the remand for those that do. Lines always have to be drawn somewhere in these sort of situations. Judge Carter was trying to do what was fair. Judge Pregerson, you talked about doing what was fair. He was trying to do what was fair, and that was give a fair and just sentence pursuant to 3553A. He felt that he could not, given the state of the law at the time. We'd ask this Court to give the case back to Judge Carter and let him do a resentencing pursuant to ameliorated remand, where he can consider all the information in the case and by doing so make an appropriate and complete Section 3553A analysis. Thank you. Thank you.
judges: Pregerson, Thompson, Fogel